JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Curtis Williams appeals from his convictions for two counts of aggravated robbery with two gun specifications. For the reasons that follow, we affirm.
 {¶ 2} Defendant was arrested by Cleveland police on February 13, 2003, when two juveniles, P.O. and B.K.,[1] identified him as the person who robbed them on November 9, 2002.
 {¶ 3} On November 9, 2002, P.O. and B.K. reported that two assailants ordered them at gunpoint to remove their shoes and coats. They described the gunman as wearing a "Rocawear" black leather coat, a black hooded sweatshirt, and having braided hair. Both P.O. and B.K. described the gun as a black automatic. They recognized the gunman as a person they had seen moments before in a convenience store in Cleveland They saw the gunman's face but not the face of his accomplice. Although the juveniles called the police on November 9th, no one was arrested that day.
 {¶ 4} A few months later, in February 2003, P.O. and B.K. saw the defendant in the same area where they were robbed. Defendant was wearing a "Rocawear" black leather coat, a black hooded sweatshirt, and the same kind of shoes that were stolen from P.O. The juveniles flagged down a nearby police officer and identified defendant as the person who robbed them on November 9th. Both juveniles were certain that it was defendant who robbed them at gunpoint. Defendant was arrested.
 {¶ 5} At trial, B.K. identified defendant as the one who brandished a gun at him on November 9, 2002. He said he saw defendant's face prior to the holdup. B.K. saw defendant a second time on his way home from school. He called police but no arrest was made. B.K. saw defendant for a third time on February 13, 2003 when defendant was arrested. Initially, B.K. described the gunman as "stocky." At trial, B.K. described defendant as "slim" but explained that the coat defendant was wearing made him look bigger. The arresting officer also said defendant looked bigger with his coat on.
 {¶ 6} P.O. identified defendant at trial. He was certain that defendant was the one who robbed him at gunpoint on November 9, 2002. P.O. identified the shoes defendant was wearing at the time of his arrest (State's Ex. 1), as the ones stolen from him. P.O wears both size 9½ and size 10 shoes. Exhibit 1 is a pair of size 10 "Timberland" boots.
 {¶ 7} The jury found defendant guilty of both counts of aggravated robbery and each gun specification. The court imposed the shortest possible prison sentence of six years. Defendant appeals, assigning the following assignments of error, both of which challenge the verdicts as being against the manifest weight and sufficiency of the evidence and will, therefore, be addressed together:
 {¶ 8} "I. Appellant Curtis Williams' conviction for aggravated robbery was based on insufficient evidence and against the manifest weight of the evidence.
 {¶ 9} "II. Appellant Curtis Williams' conviction for the firearm specification was based on insufficient evidence and against the manifest weight of the evidence."
A. Sufficiency of the Evidence
 {¶ 10} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380,386.
 {¶ 11} Defendant believes there is insufficient evidence to support his conviction on the firearm specifications because no gun was fired or recovered. That, however, does not preclude his convictions under the firearm enhancement specifications. The Ohio Supreme Court has held that "[a] firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." Id. at paragraph one of the syllabus.
 {¶ 12} The record contains evidence that defendant brandished a black automatic gun at B.K. and P.O. on November 9, 2002. Defendant and an accomplice forced B.K. and P.O. into a dark area. Defendant ordered B.K. and P.O. to take off their shoes and coats while holding a gun towards P.O.'s head. The boys complied and defendant ran away while his accomplice took the items of clothing. There was sufficient evidence to support defendant's convictions for aggravated robbery under R.C. 2911.01 and the related firearm enhancement specifications.
Manifest Weight of the Evidence
 {¶ 13} To warrant reversal from a verdict under a manifest weight of the evidence claim, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 14} Defendant's convictions were not against the manifest weight of the evidence. Defendant complains that the verdicts were against the manifest weight of the evidence because defendant was apprehended months after the robbery of P.O. and B.K and because the robbery occurred at night. Defendant also claims that the shoes taken from defendant were not the size P.O. "normally wears" and that the verdicts were against the manifest weight of the evidence because B.K. initially described his assailant as being "heavy" but acknowledged at trial that defendant was "thin."
 {¶ 15} Both victims were certain that defendant was the gunman. At the time of his arrest, defendant was wearing the exact same shoes that were stolen from P.O. and was otherwise wearing the same clothes as the assailant, i.e., a "Rocawear" black leather jacket and a black hooded sweatshirt. Defendant was apprehended in the same location that the robbery occurred. P.O. testified that he wears both size 9½ and size 10 shoes and identified Exhibit 1 as his shoes. B.K. explained that he thought defendant was stocky because of his coat. The arresting officer corroborated the fact that defendant's coat made him look bigger. We do not find the jury "clearly lost its way" such that a "manifest miscarriage of justice" occurred.
 {¶ 16} Because defendant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, these assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., and McMonagle, J., Concur.
[1] Juveniles are referred to by initial in accordance with this Court's established policy.